UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

*RML*

*DEC 0 3 2009*

NEYDA REYES

      Plaintiff

v.

MEGA LIFE & HEALTH INSURANCE
COMPANY

      Defendant

CIVIL ACTION NO.

## 09 - 23610

*CIV-HOEVELER*  *MAGISTRATE JUDGE*
*TURNOFF*

## <u>NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT</u>

Now comes defendant MEGA LIFE & HEALTH INSURANCE COMPANY ("Mega Life"), and for its Notice of Removal, states:

1.

Plaintiff commenced this action against Mega Life, a diverse party, on or about October 27, 2009, by the filing of a complaint in the Circuit Court of Miami-Dade County, Florida, Case No. 09-78887CA03

2.

Mega Life was served with the summons and complaint, through service on the Florida Department of Financial Services, on November 5, 2009.  (A copy of the summons and a copy of the complaint are attached as composite Exhibit A.)

3.

Removal is timely in that it has been less than 30 days since Mega Life received a copy of "the initial pleading setting forth the claim for relief upon which such action or proceeding is

based . . . ." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999); 28 U.S.C. §§ 1441, 1446.

4.

This Court has diversity jurisdiction of this action under the provisions of 28 U.S.C. § 1332 and it is one that may be removed to this Court by Mega Life, pursuant to the provisions of 28 U.S.C. § 1441, in that it is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states. Removal is effectuated pursuant to the provision of 28 U.S.C. § 1441, and is timely under the provisions of 28 U.S.C. § 1446(b) in that less than thirty (30) days have passed since Mega Life was formally served with a copy of "the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999); 28 U.S.C. § 1446(b).

## **Diversity of Citizenship**

5.

Plaintiff is a citizen of the state of Florida. (Exh. A, Complaint at ¶ 8). Mega Life is an insurance company organized under the laws of Texas, with its principal place of business in North Richland Hills, Texas.

6.

The complaint does not specifically indicate the citizenship of Mega Life. However, and as set forth below, the notice of removal, with its attached exhibits, shows that diversity jurisdiction exists in this Court under 28 U.S.C. § 1332.

7.

For purposes of diversity, this Court may consider the entire record presented to it for removal and not merely the complaint. *Woolard v. Heyer-Schulte*, 791 F. Supp. 294 (S.D. Fla. 1992). In *Woolard*, the court held that a defendant seeking to remove an action based on diversity of citizenship can supply the elements required to establish federal diversity jurisdiction in its removal papers. *Id.* at 295. The court stated that if it adopted the face of the complaint rule:

> [D]efendant's statutory right to removal would be wholly contingent upon the plaintiff's choice of words. If, for example, a citizen of Florida were suing a citizen of New York in Florida state court for a million dollars, he could foreclose the possibility of removal simply by omitting any allegation of the defendant's citizenship. As the commentators have written, were this the rule, it would be a most undesirable one.

*Id.* at 296 (citations omitted); *accord Wright v. Continental Cas. Co.*, 456 F. Supp. 1075, 1077 (M.D. Fla. 1978).

8.

The failure to consider the notice of removal would deprive Mega Life of its statutory right to remove. As one authority reasoned:

> Fortunately, *in practice, the federal courts usually do not limit their inquiry to the face of the plaintiff's complaint, but rather consider the facts disclosed on the record as a whole in determining the propriety of removal.* 28 U.S.C. § 1446 makes it clear that this practice is correct. The provisions that a removal petition may be filed within thirty days of receipt of an "amended pleading, motion, order or other paper" from which it first appears that the case is removable demonstrates that a variety of papers may be considered in determining the removability of a case and it has been so held. *Similarly there would be little point in requiring the petition for removal to contain a "short and plain statement" of the grounds for removal, if the federal court could not look to that statement to inform itself of the propriety of removal.*

14A Wright Miller & Cooper, *Federal Practice and Procedure: Jurisdiction*, 2d, § 3734 (1991) (emphasis added).

9.

To look strictly to the complaint and nothing else would allow plaintiff, either intentionally or unintentionally, to defeat Mega Life's right to remove a case which meets the diversity jurisdiction requirements simply by omitting relevant facts from the complaint. *See id.*

10.

Under these principles, the notice of removal corrects any technical impediments to removal by identifying the correct citizenship and identity of the parties and, in doing so, demonstrates that diversity jurisdiction exists in this Court.

**Amount in Controversy**

11.

Plaintiff seeks to recover unspecified benefits under Basic Hospital/Medical-Surgical Expense Certificate No. 903573580 (the "Certificate"), issued to him under Group Policy No. 00385, which, in turn, was issued by Mega Life to Americans for Financial Security, as group policyholder. (*See* Exh. A, Complaint at ¶¶ 11, 13-24, and Composite Exhibit A.)  While the complaint does not specify the amount that plaintiff seeks to recover as unpaid medical expenses, Exhibit B makes clear that the amount exceeds $75,000. (*See* Exh. B, sampling of EOB forms.)

12.

Additionally, plaintiff seeks to recover attorney fees pursuant to § 627.428, Fla. Stat. (2009).  (Exh. A, Complaint at ¶ 11.)

13.

So, plaintiff's allegations, when read with the exhibits to both the complaint and the Notice of Removal, establish, without doubt, that the amount in controversy is far in excess of this Court's $75,000 jurisdictional threshold, and therefore, that the requirement for diversity

jurisdiction to exist has been met.

## **Removal Jurisdiction**

### 14.

Mega Life requests that the United States District Court for the Southern District of Florida issue such orders and process as are necessary to preserve its jurisdiction over this matter.

This 30th day of November, 2009.

By: _____

Joelle C. Sharman
Florida Bar No. 0045070
jsharman@fordharrison.com
Leanne C. Mehrman
Florida Bar No. 0993255
lmehrman@fordharrison.com

FORD & HARRISON LLP
1275 Peachtree Street, N.E., Suite 600
Atlanta, GA  30309
Telephone:    (404) 888-3800
Facsimile:    (404) 888-3863

Attorneys for Mega Life & Health Insurance Company

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that she served a copy of the foregoing

NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT to the following via

U.S. Mail, postage prepaid, before the hour of 5:00 pm, on November 30, 2009:

> Robert N. Pelier, Esq.
> 4649 Ponce De Leon Boulevard
> Suite 305
> Coral Gables, Florida 33146

Joelle C. Sharman

Atlanta:493800.1

**ALEX SINK**
**CHIEF FINANCIAL OFFICER**
**STATE OF FLORIDA**
Florida Department of Financial Services

09-60735

NEYDA REYES,

PLAINTIFF(S),

VS.

MEGA LIFE & HEALTH INSURANCE COMPANY

DEFENDANT(S).

_____/

SUMMONS,COMPLAINT FOR DAMAGES, COMPOSITE EXHIBIT

CASE #:     09 78887 CA 03
COURT:     CIRCUIT COURT
COUNTY:  MIAMI-DADE
DFS-SOP#: 09-60735

## NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial
Officer of the State of Florida.  Said process was received in my office by MAIL on the 2nd day
of November, 2009 and a copy was forwarded by Electronic Delivery on the 5th day of
November, 2009 to the designated agent for the named entity as shown below.

MEGA LIFE & HEALTH INSURANCE COMPANY
BRENDA JOHNSON   (brenda.johnson@healthmarkets.com)
THE MEGA LIFE & HEALTH INS CO
9151 GRAPEVINE HWY
NORTH RICHLAND HILLS TX 76180

\* Our office will only serve the initial process (Summons and Complaint) or Subpoena and is not responsible for transmittal of any
subsequent filings, pleadings or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule #1.080.

*Alex Sink*

Alex Sink
Chief Financial Officer

cc to: Plaintiff's Representative for filing in appropriate court:

ROBERT N. PELIER, ESQ.
SUITE 305
4649 PONCE DE LEON BLVD.
CORAL GABLES FL 33146

LMK

**ALEX SINK**
**CHIEF FINANCIAL OFFICER**
**STATE OF FLORIDA**
Florida Department of Financial Services


09-60735

NEYDA REYES,                          **CASE #:  09 78887 CA 03**
                                      **COURT:   CIRCUIT COURT**
PLAINTIFF(S),                         **COUNTY: MIAMI-DADE**
                                      **DFS-SOP#: 09-60735**
VS.

MEGA LIFE & HEALTH INSURANCE COMPANY

DEFENDANT(S).
_____ /
SUMMONS,COMPLAINT FOR DAMAGES, COMPOSITE EXHIBIT

## NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial
Officer of the State of Florida.  Said process was received in my office by MAIL on the 2nd day
of November, 2009 and a copy was forwarded by Electronic Delivery on the 5th day of
November, 2009 to the designated agent for the named entity as shown below.

    MEGA LIFE & HEALTH INSURANCE COMPANY
    BRENDA JOHNSON  (brenda.johnson@healthmarkets.com)
    THE MEGA LIFE & HEALTH INS CO
    9151 GRAPEVINE HWY
    NORTH RICHLAND HILLS TX 76180

\* Our office will only serve the initial process (Summons and Complaint) or Subpoena and is not responsible for transmittal of any
subsequent filings, pleadings or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule #1.080.

*Alex Sink*

Alex Sink
Chief Financial Officer

cc to: Plaintiff's Representative for filing in appropriate court:

ROBERT N. PELIER, ESQ.
SUITE 305                                                    **LMK**
4649 PONCE DE LEON BLVD.
CORAL GABLES FL 33146

**ALEX SINK**
**CHIEF FINANCIAL OFFICER**
**STATE OF FLORIDA**
Florida Department of Financial Services



09-60735

NEYDA REYES,

PLAINTIFF(S),

VS.

MEGA LIFE & HEALTH INSURANCE COMPANY

DEFENDANT(S).

_____/

SUMMONS,COMPLAINT FOR DAMAGES, COMPOSITE EXHIBIT

CASE #:   **09 78887 CA 03**
COURT:   **CIRCUIT COURT**
COUNTY: **MIAMI-DADE**
DFS-SOP#: **09-60735**

## NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial
Officer of the State of Florida. Said process was received in my office by MAIL on the 2nd day
of November, 2009 and a copy was forwarded by Electronic Delivery on the 5th day of
November, 2009 to the designated agent for the named entity as shown below.

    MEGA LIFE & HEALTH INSURANCE COMPANY
    BRENDA JOHNSON  (brenda.johnson@healthmarkets.com)
    THE MEGA LIFE & HEALTH INS CO
    9151 GRAPEVINE HWY
    NORTH RICHLAND HILLS TX 76180

\* Our office will only serve the initial process (Summons and Complaint) or Subpoena and is not responsible for transmittal of any
subsequent filings, pleadings or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule #1.080.

*Alex Sink*

Alex Sink
Chief Financial Officer

cc to: Plaintiff's Representative for filing in appropriate court:

ROBERT N. PELIER, ESQ.
SUITE 305
4649 PONCE DE LEON BLVD.
CORAL GABLES FL 33146

                                     **LMK**

**ALEX SINK**
**CHIEF FINANCIAL OFFICER**
**STATE OF FLORIDA**
Florida Department of Financial Services


09-60735

NEYDA REYES,

PLAINTIFF(S),

VS.

MEGA LIFE & HEALTH INSURANCE COMPANY

DEFENDANT(S).
_____/

SUMMONS,COMPLAINT FOR DAMAGES, COMPOSITE EXHIBIT

CASE #:     09 78887 CA 03
COURT:     CIRCUIT COURT
COUNTY:   MIAMI-DADE
DFS-SOP#: 09-60735

## NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial
Officer of the State of Florida. Said process was received in my office by MAIL on the 2nd day
of November, 2009 and a copy was forwarded by Electronic Delivery on the 5th day of
November, 2009 to the designated agent for the named entity as shown below.

    MEGA LIFE & HEALTH INSURANCE COMPANY
    BRENDA JOHNSON   (brenda.johnson@healthmarkets.com)
    THE MEGA LIFE & HEALTH INS CO
    9151 GRAPEVINE HWY
    NORTH RICHLAND HILLS TX 76180

\* Our office will only serve the initial process (Summons and Complaint) or Subpoena and is not responsible for transmittal of any
subsequent filings, pleadings or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule #1.080.

*Alex Sink*

Alex Sink
Chief Financial Officer

cc to: Plaintiff's Representative for filing in appropriate court:

ROBERT N. PELIER, ESQ.
SUITE 305                                                              **LMK**
4649 PONCE DE LEON BLVD.
CORAL GABLES FL 33146

**ALEX SINK**
**CHIEF FINANCIAL OFFICER**
**STATE OF FLORIDA**
Florida Department of Financial Services


09-60735

NEYDA REYES,

PLAINTIFF(S),

VS.

MEGA LIFE & HEALTH INSURANCE COMPANY

DEFENDANT(S).
_____/

SUMMONS,COMPLAINT FOR DAMAGES, COMPOSITE EXHIBIT

CASE #:     09 78887 CA 03
COURT:     CIRCUIT COURT
COUNTY:  MIAMI-DADE
DFS-SOP#: 09-60735

## NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial
Officer of the State of Florida.  Said process was received in my office by MAIL on the 2nd day
of November, 2009 and a copy was forwarded by Electronic Delivery on the 5th day of
November, 2009 to the designated agent for the named entity as shown below.

MEGA LIFE & HEALTH INSURANCE COMPANY
BRENDA JOHNSON  (brenda.johnson@healthmarkets.com)
THE MEGA LIFE & HEALTH INS CO
9151 GRAPEVINE HWY
NORTH RICHLAND HILLS TX 76180

\* Our office will only serve the initial process (Summons and Complaint) or Subpoena and is not responsible for transmittal of any
subsequent filings, pleadings or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule #1.080.

*Alex Sink*
Alex Sink
Chief Financial Officer

cc to: Plaintiff's Representative for filing in appropriate court:

ROBERT N. PELIER, ESQ.
SUITE 305
4649 PONCE DE LEON BLVD.
CORAL GABLES FL 33146

LMK

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT**
**IN AND FOR MIAMI-DADE COUNTY FLORIDA**

NEYDA REYES,                                    **GENERAL JURISDICTION DIVISION**

     Plaintiff,

                           **CASE NO.:**  0 9 · 7 9 8 8 7 C A 0

v.

**MEGA LIFE & HEALTH**
**INSURANCE COMPANY**                            **SUMMONS**

Defendant.
_____/

**TO DEFENDANT:**  **Mega Life & Health Insurance Company**
                    **% Insurance Commissioner/Chief Financial Officer as RA**
                    **200 East Gaines Street**
                    **Tallahassee, FL 32399**

**THE STATE OF FLORIDA**
**To Each Sheriff of the State:**

     **YOU ARE COMMANDED** to serve this summons and a copy of the complaint in this lawsuit on the above-named defendant.

     Each defendant is required to serve written defenses to the **Complaint** on **Law Office of Robert N. Pelier, P.A.,** plaintiff's attorney, whose address is **4649 Ponce de Leon Boulevard, Suite 305, Coral Gables, FL 33146,** within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If the defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

                                OCT 2 7 2009
**DATED ON:**_____

       **(SEAL)**

                        **CLERK OF THE COURT**

                              *Caroline Williams*
                  **BY:** _____
                            **As Deputy Clerk**

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FLORIDA

NEYDA REYES,                                    GENERAL JURISDICTION DIVISION

     Plaintiff,

                                         CASE NO.:     0 9 · 7 8 8 3 7 CA 0 3

v.

MEGA LIFE & HEALTH
INSURANCE COMPANY                               **SUMMONS**

Defendant.
_____/

TO DEFENDANT:  Mega Life & Health Insurance Company
                   % Insurance Commissioner/Chief Financial Officer as RA
                   200 East Gaines Street
                   Tallahassee, FL 32399

THE STATE OF FLORIDA
To Each Sheriff of the State:

     **YOU ARE COMMANDED** to serve this summons and a copy of the complaint in this lawsuit on the above-named defendant.

     Each defendant is required to serve written defenses to the **Complaint** on **Law Office of Robert N. Pelier, P.A.**, plaintiff's attorney, whose address is **4649 Ponce de Leon Boulevard, Suite 305, Coral Gables, FL 33146**, within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If the defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

                              OCT 2 7 2009
DATED ON:_____

     (SEAL)

                           CLERK OF THE COURT

                                  _____ line Williams_
                    BY: _____
                            As Deputy Clerk



IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FLORIDA

NEYDA REYES,                              GENERAL JURISDICTION DIVISION

     Plaintiff,

                                  CASE NO.:   0 9 · 7 8 8 8 7 CA 0 3

v.

MEGA LIFE & HEALTH                       THE ORIGINAL FILED
INSURANCE COMPANY                        IN THE OFFICE OF THE CLERK
                                         LOC # 25 _____
Defendant.                               CIRCUIT & COUNTY COURTS
                                         DADE COUNTY FLORIDA   OCT 2 7 2009
_____/                ON _____

### COMPLAINT FOR DAMAGES

     The Plaintiff, **Neyda Reyes** (hereinafter referred to as "Reyes" by and through undersigned counsel, sues Defendant, **Mega Life & Health Insurance Company** (hereinafter referred to as the "Insurer") and states as follows:

### FACTS COMMON TO ALL CAUSES OF ACTION

### I. INTRODUCTION

1.    This case is an action against the Insurer for violations and breach of the insurance agreement at common law and provisions as more particularly described herein and hereby demand against the Defendant/Insurer any and all damages available under the statutes and/or common and statutory law principles.

2.    This action arises of the Insurer's breach of the applicable health insurance contract.



## JURISDICTION AND VENUE

3.  This action is brought pursuant to the statutory authority mentioned herein and principles of state common law.

4.  This court has jurisdiction over this action pursuant to the damages claimed herein which exceed $15,000.00, exclusive of costs and attorney fees.

5.  Venue is proper in Miami-Dade County since the Insurer is doing business in this judicial circuit and the acts and transactions that were part of this claim occurred in this circuit. Plaintiff also resides in Miami-Dade County, Florida.

6.  All conditions precedent to the filing of this action, if any, have been performed, waived or have otherwise occurred.

7.  Reyes has retained the undersigned counsel reasonable attorney fees and costs. The insurer is obligated, by Florida statutes to pay her reasonable attorneys' fees and costs as per Florida Statutes 641.3154, 627.428, 57.105 et seq. and any other applicable provision of law providing for attorney fees.

## PARTIES

8.  Reyes is over the age of eighteen (18), resident of Miami Dade County, Florida and is sui juris.

9.  The insurer is a duly registered foreign corporation authorized to do business in Florida and is registered to conduct business and underwrite and issue insurance policies within the State of Florida. The Defendant is doing business in Miami-Dade County, Florida and is otherwise sui juris. The insurer may also be a Health Maintenance Organization as per §641 et seq., Fla Stat. (2000).

2



NEYDA REYES
v.
MEGA LIFE AND HEALTH INSURANCE COMPANY
COMPLAINT
Page 3 of 5

## COUNT I
## BREACH OF CONTRACT COMMON LAW

10.   Plaintiff, Reyes re-asserts paragraphs 1-9 as if set forth fully herein.

11.   On or before January 2008, Insurer issued a health insurance policy to Angel
      Reyes (Plaintiff's Husband) and/or extended health insurance coverage to Angel
      Reyes, Neyda Reyes and family. (See Attached Composite Exhibit "A",
      Certificate of Group Health Individual Plan Coverage)

12.   On or about the inception of the health insurance policy, the Insurer either issued
      or continued the already existing individual health coverage policy for Neyda
      Reyes as the wife of Angel Reyes and issued him/her a policy number of
      09903573580 and BCN 9543573580. (See Attached Composite Exhibit "B"
      Certificate of Group Health Individual Plan Coverage)

13.   The health insurance contract obligates the Insurer to pay third party medical
      services provider for medical/health care services provided to the insured as
      described and defined by the policy.

14.   The Plaintiff as insured required medical services which have been provided and
      have not been paid for by the Insurer as obligated by the insurance policy.  The
      medical providers are third party beneficiaries of the health insurance contract
      between the insurer and the patient/insured.

15.   On or about May 2005, Plaintiff Reyes received medical services for the
      treatment of the diagnosis of breast cancer.  The Plaintiff ensured and upon
      information and belief asserts that the Defendant received adequate proof of the
      services provided to the Plaintiff.  Plaintiff also contends that the Defendant
      received the medical bills incurred by the Plaintiff for the referenced treatment.

3

(See Composite Exhibit "C" medical invoices and explanation of benefits currently if possession by Plaintiff)

16.     Plaintiff and/or medical providers on the Plaintiff's behalf submitted the bills for payment to the Defendant properly and on a timely basis. The Defendant has not paid the bills in total and/or at the level of coverage benefits as per the insurance agreement. Specifically, the Defendant has not paid the benefits at the coverage promised under the policy. This has left a patient responsibility in excess of any pertinent co-payment or patient responsibility as set forth in the insurance policy.

17.     Plaintiff rendered health care services that were covered under the subject insurance policy and were reasonable and medically necessary, including but not limited to hospitalization, surgery and all relevant preparatory and laboratory services.

18.     Plaintiff had received the appropriate authorization from the Defendant, primary care physician and/or was otherwise authorized to render the medical/health care services and receive payment for same from the Defendant.

19.     The Defendant has been requested to pay the medical providers in full and the Defendant has refused. Plaintiff has been compelled to advance the payment for the medical services rendered. Plaintiff has not received payment for the medical/health care services provided to the Patient and the Defendant has not made payment or explained or justified the reason for its non-payment of the benefits and reduced coverage due under the policy.

20.     Defendant's actions are in breach of the insurance contract and in violation of the "prompt pay provisions" of Florida Statute 641.3155 and Plaintiff seeks reimbursement for sums advanced and/or payment by the Defendant in accord with it insurance policy obligations.

4

21. Therefore, by and through the subject agreement, Plaintiff is the beneficiary of the Defendant's obligations as per the contractual insurance agreement.

22. The Defendant has violated the insurance agreement and has violated a myriad of provisions of Chapter 641, Florida Statutes as referenced and invoked in the subject agreement and applicable by Florida law.

23. Pursuant to Florida Law, Plaintiff is entitled to her general and compensatory damages, plus interest, costs and attorney's fees.

24. The foregoing acts of the Defendant constituted a general business practice and were wanton, willful and malicious and/or were in reckless disregard of the rights of the Plaintiff thereby entitling Plaintiff to an award of punitive damages.

**WHEREFORE,** Plaintiff demands judgment against insurer for compensatory damages, punitive damages, attorney fees and costs and any other relief that this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff, Neyda Reyes hereby demands a trial by jury for all matters so triable.

Dated on this 27th day of October, 2009.

**Respectfully Submitted**

By: _____

Robert N. Pelier, Esq.
Florida Bar No.: 0998834
Attorney for Plaintiff
Law Office of Robert N. Pelier, P.A.
4649 Ponce De Leon Boulevard, Suite 305
Coral Gables, FL 33146
Telephone:  (305) 529-9199
Facsimile:  (305) 529-9290

5

## CERTIFICATE SCHEDULE

COVERAGE IS PROVIDED UNDER GROUP POLICY NO.:   00385

ISSUED TO GROUP POLICYHOLDER:  Americans for Financial Security, Inc

PRIMARY INSURED:  ANGEL REYES

COVERED DEPENDENTS:  NEYDA          ANGEL          IRIALIRIS

CERTIFICATE NUMBER:   903573580          CERTIFICATE DATE:  01/01/2003

INITIAL PREMIUM:        $750.00          MODE OF PAYMENT: MONTHLY

## SCHEDULE OF BENEFITS

LIFETIME MAXIMUM AMOUNT:          $1,000,000

AGGREGATE MAXIMUM AMOUNT:          $500,000

DEDUCTIBLE:          $3,000

| BENEFITS | Coinsurance | Maximum Benefit |
|---|---|---|
| Hospital Room and Board Amount | 100% | up to $700 per day |
| Hospital Intensive Care/ Cardiac Care Unit (limited to 90 days per Period of Confinement) | 100% | up to $1,200 per day |
| Miscellaneous Hospital Inpatient Charges | 80% | up to $24,000 *4,800* |
| Mammography Screening | | Not subject to Deductible or Coinsurance |
| Child Health Supervision Services | 80% | up to $100 |
| Post Surgical Mastectomy Care | 80% | |
| Physician Visits while Hospital Confined (limited to one visit per day) | 100% | up to $50 per day |
| Surgery Benefit | 80% | up to $8,000 *1,600* |
| Assistant Surgeon Benefit | | 20% of the amount paid to surgeon, up to $1,600 |

**Composite Exhibit "A"**

## CERTIFICATE SCHEDULE

### SCHEDULE OF BENEFITS (Continued)

| BENEFITS (Continued) | Coinsurance | Maximum Benefit |
|---|---|---|
| Anesthesiologist Benefit | | 30% of the amount paid to surgeon, up to $2,400 |
| Outpatient Surgery Facility Charges | 80% | up to $6,000 |
| Ambulance Transport (payable only when Hospital Confined) | 100% | up to $250 per trip |
| All Other Covered Expenses not Specifically listed in this Schedule of Benefits and not specifically excluded | 80% | |

25875-C-FL                                   -4-                              CMSFL09A001

# CERTIFICATE SCHEDULE

### SCHEDULE OF BENEFITS (Continued)

| OPTIONAL RIDERS | Amount of Benefit |
|---|---|
| **PHYSICIAN'S OFFICE VISIT BENEFIT RIDER*** | |
| Copayment, per visit | $15 |
| Daily Maximum Benefit, per visit | $50 |
| Maximum Number of visits | |
| Per Insured Person, per calendar quarter | 2   visit |
| Per Family, per Calendar Year | 24 visits |

*Exclusion No. 31, as shown in the EXCLUSIONS and LIMITATIONS section of this Certificate, does not apply to this Rider.

| | |
|---|---|
| **AMBULATORY CARE RIDER** | |
| Lifetime Maximum Amount, Per Insured Person | $100,000 |
| Deductible Per Insured Person, Per Calendar Year | $500 |
| Coinsurance | 80% |
| Maximum Benefit Amount, per Insured Person, per 24 hours | $1,000 |
| | |
| **WELLNESS RIDER** | |
| **Annual Physical Exam** | |
| Copayment | $25 |
| Maximum Benefit, per Calendar Year | $100 |
| **Well Child Care** | |
| Copayment | $25 |
| Maximum Benefit, per Calendar Year | $100 |
| **AIR AMBULANCE RIDER** | YES |
| **CHEMOTHERAPY/RADIATION THERAPY RIDER** | |
| Lifetime Maximum Amount | $100,000 |
| Coinsurance | 80% |
| Daily Maximum Benefit | $1,250 |
| **ACCUMULATED COVERED EXPENSE BENEFIT** | |
| Accumulated Covered Expense Amount | $75,000 |
| **PRESCRIPTION DRUG RIDER** | YES |
| **OUTPATIENT ACCIDENT EXPENSE BENEFIT RIDER** | |
| Deductible, Per Injury | $100 |
| Maximum Benefit Amount, Per Injury | $1,800 |

# THE MEGA LIFE AND HEALTH INSURANCE COMPANY

A Stock Company
(Hereinafter called: the Company, We, Our or Us)
Home Office: Oklahoma City, Oklahoma
Administrative Office: P.O. Box 982010
North Richland Hills, Texas 76182-8010
Customer Service: 1-800-527-5504

## BASIC HOSPITAL/MEDICAL-SURGICAL EXPENSE CERTIFICATE

### IMPORTANT NOTICE ABOUT STATEMENTS IN THE ENROLLMENT APPLICATION

The attached enrollment application is a part of this Certificate. Please read it and check it carefully. This Certificate is issued on the basis that Your answers are correct and complete. If it is not complete or has an error, please let Us know within 10 days. An incorrect enrollment application may cause Your coverage to be voided, or a claim to be reduced or denied.

### 10 DAY RIGHT TO EXAMINE THE CERTIFICATE

It is important to Us that You understand and are satisfied with the coverage being provided to You. If You are not satisfied that this coverage will meet Your insurance needs, You may return this Certificate to Us at Our administrative office in North Richland Hills, Texas, within 10 days after You receive it. Upon receipt, We will cancel Your coverage as of the Certificate Date, refund all premiums paid and treat the Certificate as if it were never issued.

### RENEWABILITY

This Certificate is guaranteed renewable, subject to the Company's right to discontinue or terminate the coverage as provided in the TERMINATION OF COVERAGE section of this Certificate. The Company reserves the right to change the applicable table of premium rates on a Class Basis. The premium for the Certificate may change in amount by reason of an increase in the age of an Insured Person.

This Certificate is a legal contract between You and Us. **PLEASE READ YOUR CERTIFICATE CAREFULLY!**

SECRETARY                                    PRESIDENT

### IMPORTANT MESSAGE TO OUR CERTIFICATEHOLDERS

Canceling health insurance coverage and purchasing new coverage, on account of encouragement by any agent, is called replacement. Some states have laws which forbid any misrepresentation by any agent that may occur at the time of replacement. Beware of anyone who encourages You to replace this coverage without allowing You time to carefully investigate the replacement proposal, or discourages You from talking with a representative of the Company whose coverage is being recommended for replacement. For Your protection, if You are encouraged to replace this coverage, We urge You to seek advice and to take the time to investigate any recommendation.

**THE BENEFITS OF THE POLICY PROVIDING YOUR COVERAGE ARE GOVERNED PRIMARILY BY THE LAWS OF A STATE OTHER THAN FLORIDA.**

# TABLE OF CONTENTS

|  | PAGE |
|---|---|
| CERTIFICATE SCHEDULE | 3 |
| DEFINITIONS | 6 |
| EFFECTIVE DATE OF COVERAGE | 10 |
| PREMIUMS | 11 |
| TERMINATION OF COVERAGE | 11 |
| CASE MANAGEMENT | 14 |
| BENEFITS | 14 |
| EXCLUSIONS AND LIMITATIONS | 18 |
| COORDINATION OF BENEFITS | 19 |
| GENERAL PROVISIONS | 21 |

## CERTIFICATE SCHEDULE

COVERAGE IS PROVIDED UNDER GROUP POLICY NO.:  00385

ISSUED TO GROUP POLICYHOLDER:  Americans for Financial Security, Inc

PRIMARY INSURED:  ANGEL REYES

COVERED DEPENDENTS:  NEYDA          ANGEL          IRIALIRIS

CERTIFICATE NUMBER:  903573580

INITIAL PREMIUM:     $750.00

CERTIFICATE DATE:  01/01/2003

MODE OF PAYMENT: MONTHLY

## SCHEDULE OF BENEFITS

LIFETIME MAXIMUM AMOUNT:          $1,000,000

AGGREGATE MAXIMUM AMOUNT:         $500,000

DEDUCTIBLE:                        $3,000

| BENEFITS | Coinsurance | Maximum Benefit |
|---|---|---|
| Hospital Room and Board Amount | 100% | up to $700 per day |
| Hospital Intensive Care/ Cardiac Care Unit (limited to 90 days per Period of Confinement) | 100% | up to $1,200 per day |
| Miscellaneous Hospital Inpatient Charges | 80% | up to $24,000 *4,800* |
| Mammography Screening | | Not subject to Deductible or Coinsurance |
| Child Health Supervision Services | 80% | up to $100 |
| Post Surgical Mastectomy Care | 80% | |
| Physician Visits while Hospital Confined (limited to one visit per day) | 100% | up to $50 per day |
| Surgery Benefit | 80% | up to $8,000 *1,600* |
| Assistant Surgeon Benefit | | 20% of the amount paid to surgeon, up to $1,600 |

25875-C-FL                    -3-                    CMSFL09A001

## CERTIFICATE SCHEDULE

### SCHEDULE OF BENEFITS (Continued)

| BENEFITS (Continued) | Coinsurance | Maximum Benefit |
|---|---|---|
| **Anesthesiologist Benefit** | | 30% of the amount paid to surgeon, up to $2,400 |
| **Outpatient Surgery Facility Charges** | 80% | up to $6,000 |
| **Ambulance Transport** (payable only when Hospital Confined) | 100% | up to $250 per trip |
| **All Other Covered Expenses not Specifically listed in this Schedule of Benefits and not specifically excluded** | 80% | |

# CERTIFICATE SCHEDULE

## SCHEDULE OF BENEFITS (Continued)

| OPTIONAL RIDERS | Amount of Benefit |
|---|---|
| **PHYSICIAN'S OFFICE VISIT BENEFIT RIDER\*** | |
| Copayment, per visit | $15 |
| Daily Maximum Benefit, per visit | $50 |
| Maximum Number of visits | |
| Per Insured Person, per calendar quarter | 2 visit |
| Per Family, per Calendar Year | 24 visits |

\*Exclusion No. 31, as shown in the EXCLUSIONS and LIMITATIONS section of this Certificate, does not apply to this Rider.

| | |
|---|---|
| **AMBULATORY CARE RIDER** | |
| Lifetime Maximum Amount, Per Insured Person | $100,000 |
| Deductible Per Insured Person, Per Calendar Year | $500 |
| Coinsurance | 80% |
| Maximum Benefit Amount, per Insured Person, per 24 hours | $1,000 |
| | |
| **WELLNESS RIDER** | |
| Annual Physical Exam | |
| Copayment | $25 |
| Maximum Benefit, per Calendar Year | $100 |
| Well Child Care | |
| Copayment | $25 |
| Maximum Benefit, per Calendar Year | $100 |
| **AIR AMBULANCE RIDER** | YES |
| **CHEMOTHERAPY/RADIATION THERAPY RIDER** | |
| Lifetime Maximum Amount | $100,000 |
| Coinsurance | 80% |
| Daily Maximum Benefit | $1,250 |
| **ACCUMULATED COVERED EXPENSE BENEFIT** | |
| Accumulated Covered Expense Amount | $75,000 |
| **PRESCRIPTION DRUG RIDER** | YES |
| **OUTPATIENT ACCIDENT EXPENSE BENEFIT RIDER** | |
| Deductible, Per Injury | $100 |
| Maximum Benefit Amount, Per Injury | $1,800 |

## DEFINITIONS

**Aggregate Maximum Amount** means the maximum amount payable under this Certificate and its Riders, if any, for any one covered Injury or Sickness for each Insured Person, occurring while coverage is in effect under this Certificate for such person. The Aggregate Maximum Amount is shown in the CERTIFICATE SCHEDULE. This amount is included in and part of the Lifetime Maximum amount for each Insured Person.

**Ambulance** means a ground vehicle which is licensed as required by law, as an Ambulance, and is equipped to transport Sick or Injured people.

**Attained Age** means the Insured Person's age on the most recent annual anniversary of the Certificate.

**Calendar Year** means a twelve month period which begins at 12:01 a.m. on January 1 of any year and ends at 12:00 midnight on December 31 of that year.

**Certificate** means the written description of coverage provided to You under the Group Policy.

**Class Basis** means the classification by which each Insured Person's rates are determined. We will not and cannot change the rates on this Certificate unless rates are changed on all Certificates issued on the same Class Basis.

**Coinsurance** means the shared percentage of Covered Expenses after satisfying the Deductible. The Coinsurance percentage We pay is shown in the CERTIFICATE SCHEDULE.

**Complications of Pregnancy** means:

1.  Conditions requiring Hospital Confinement or treatment in an Outpatient Surgery Facility (when the pregnancy is not terminated) whose diagnoses are distinct from pregnancy, but are adversely affected by pregnancy, including but not limited to: non-elective cesarean section, acute nephritis, nephrosis, cardiac decompensation, missed abortion, and similar medical and surgical conditions of comparable severity; or
2.  Termination of ectopic pregnancy, and spontaneous termination of pregnancy occurring during a time that a viable birth is not possible.

Complications of Pregnancy do not include false labor, occasional spotting, Physician prescribed rest during the period of pregnancy, morning sickness, hyperemesis gravidarum, pre-eclampsia, and similar conditions associated with the management of a difficult pregnancy not constituting a nosologically distinct complication.

**Confined/Confinement** means an Insured Person's Medically Necessary admission to and subsequent continued stay in a Hospital or Skilled Nursing Facility as an overnight bed patient and a charge for room and board is made.

**Consultation** means evaluation, diagnosis, or medical advice given without the necessity of a personal examination or visit.

**Cosmetic Surgery** means the surgical procedures for the sole purpose of improvement of appearance, which does not effect a substantial improvement or restoration of bodily function, except:

1.  Reconstructive Surgery incidental to or following Surgery resulting from trauma, infection or other disease of the involved part; or
2.  Reconstructive Surgery due to a congenital disease or anomaly of a newborn child which has resulted in a functional defect.

The condition which necessitates the Surgery must occur while coverage is in force and coverage remains in force through the date of Surgery.

**Covered Dependent** means an Eligible Dependent whose coverage has become effective under this Certificate and has not terminated.

**Covered Expenses** means Usual and Customary Charges for the services, supplies, care or treatment covered under this Certificate which are incurred by an Insured Person as a result of Injury or Sickness and for which the Insured Person is legally obligated to pay and are not otherwise excluded or limited herein. They are incurred on the date that the service is performed or the supply is furnished. Only that portion of a Usual and Customary Charge or fee which is Medically Necessary is a Covered Expense. Covered Expenses must be incurred while this coverage is in force.

Covered Expenses under the Riders, if any, may or may not be considered Covered Expenses under this Certificate.

**Deductible** means the amount of Covered Expenses that an Insured Person must pay for each Period of Confinement before benefits will be paid. Deductible does **not** include non-Covered Expenses. **The Deductible will be applied separately for each Period of Confinement in a Hospital or Outpatient Surgery Facility for each Insured Person.**

Once this Deductible has been met 3 times in a Calendar Year by any or all Insured Persons under Your Certificate, no further Deductibles must be met for the remainder of that Calendar year for any or all Insured Persons under Your Certificate.

If more than one Insured Person in Your family is injured in the same accident, only one Deductible must be satisfied for Covered Expenses associated with that accident.

**Dental Care** means services, supplies or other care for dental services and procedures involving tooth structures, extractions, gingival tissues, alveolar processes, dental x-rays (for other than an accidental Injury), procedures of dental origin, odontogenic cysts/tumors; or any orthodontic, periodontic, orthognathic treatment regardless of Medical Necessity. Dental care includes services and supplies for maxillary and/or mandibular augmentation/implant procedures to facilitate the use of full or partial dentures, prosthesis, fixed or removable.

**Effective Date of Coverage** means the date coverage becomes effective under this Certificate with respect to a particular Insured Person.

**Eligible Dependent** means Your lawful spouse and Your unmarried natural and adopted children and step-children who reside in your home for more than 6 months in a year, who are under 19 years of age (the Limiting Age). The Limiting Age is extended from the child's 19th birthday to the child's 24th birthday if the child is enrolled as a full-time student and attends classes regularly at an accredited college or university.

**Experimental or Investigational Medicine** means a drug, device or medical treatment or procedure:

1. If the drug or device cannot lawfully be marketed without approval of the United States Food and Drug Administration and approval for marketing has not been given at the time the drug or device is furnished;
2. If reliable evidence shows that the drug, device or medical treatment or procedure is the subject of ongoing Phase I, II, or III clinical trials or under study to determine its maximum tolerated dose, its toxicity, its safety, its efficacy, or its efficacy as compared with the standard means of treatment or diagnosis; or
3. If reliable evidence shows that the consensus of opinion among experts regarding the drug, device or medical treatment or procedure is that further studies or clinical trials are necessary to determine its maximum tolerated dose, its toxicity, its efficacy, or its efficacy as compared with the standard means of treatment or diagnosis.

Reliable evidence means only published reports and articles in authoritative medical and scientific literature; the written protocol or protocols by the treating facility or the protocols of another facility studying substantially the same drug, device, or medical treatment or procedures; or the written informed consent used by the treating facility or by another facility studying substantially the same drug, device, or medical treatment or procedure.

**Group Policyholder** means the entity to which the group insurance contract ("Group Policy") is issued.

**Hospital** means an institution operated pursuant to its license for the care and treatment of sick and injured persons for which a charge is made that the Insured Person is legally obligated to pay. The institution must:

1. Maintain on its premises organized facilities for medical, diagnostic and surgical care for sick and injured persons on an inpatient basis;

2.   Maintain a staff of one or more duly licensed Physicians;
3.   Provide 24 hour nursing care by or under the supervision of a registered graduate professional nurse (R.N.); and
4.   Is accredited as a Hospital by the Joint Commission on Accreditation of Hospitals.

The term "Hospital" does not include:

1.   A convalescent, nursing, rest or rehabilitative facility; a home for the aged; a facility for the care and treatment of drug addicts and alcoholics; or a special ward, floor or other accommodation for convalescent, nursing, rehabilitation, ambulatory or extended care purposes; or hotel units, residential annexes or nurse administered units in or associated with a hospital; or
2.   Any military or veteran's hospital, soldier's home or any hospital contracted for or operated by the Federal Government or any agencies thereof for the treatment of members or former members of the Armed Forces, unless the Insured Person is legally required to pay for services in the absence of this insurance coverage.

**Immediate Family** means the spouse, parent, son, daughter, brother or sister of the Insured Person.

**Injury** means bodily harm caused by an accident resulting in unforeseen trauma requiring immediate medical attention and is not contributed to, directly or indirectly, by a Sickness. The Injury must occur after the Insured Person's coverage has become effective and while the coverage is in force.

**Insured Person** means You or a Covered Dependent under this Certificate.

**Intensive Care/Cardiac Care Unit** means that part of a Hospital which:

1.   Is segregated from the rest of the Hospital facilities;
2.   Is exclusively reserved for critically ill patients who require audio-visual observation and/or cardiac monitoring as prescribed by the attending Physician; and
3.   Provides room and board, specialized registered graduate professional nurses (R.N.), and special life saving equipment and supplies.

**Intoxicated** means:

1.   not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or
2.   having an alcohol concentration that meets or exceeds the legal limit established by the laws of your state.

**Lifetime Maximum Amount** means the maximum amount payable under this Certificate and its Riders, if any, for all Covered Expenses combined, for each Insured Person. Any and all benefit amounts paid by Us will accumulate toward the Lifetime Maximum Amount from the Certificate Date. The Lifetime Maximum Amount is shown in the CERTIFICATE SCHEDULE.

**Maximum Benefit** means the maximum amount payable under this Certificate for each Insured Person for each Period of Confinement. The maximum benefit is shown in the CERTIFICATE SCHEDULE.

**Medical Emergency** means the sudden onset of a medical condition for which the Insured Person seeks immediate medical treatment at the nearest available facility. The condition must be one which manifests itself by acute symptoms which are sufficiently severe that without immediate medical attention could reasonably be expected to result in:

1.   Placing the Insured Person's health in serious jeopardy;
2.   Serious impairment of bodily functions; or
3.   Serious dysfunction of any bodily organ or part.

**Medically Necessary or Medical Necessity** means that a service or supply is necessary and appropriate for the diagnosis or treatment of an Injury or Sickness based on generally accepted current medical practice. A service or supply will not be considered Medically Necessary if:

1.   It is provided only as a convenience to the Insured Person or provider;
2.   It is not appropriate treatment for the Insured Person's diagnosis or symptoms;

25875-C-FL                              -8-                              CMPFL09001

3.   It exceeds (in scope, duration or intensity) that level of care which is needed to provide safe, adequate and appropriate diagnosis or treatment; or

4.   It is Experimental or Investigational Medicine.

The fact that a Physician may prescribe, order, recommend or approve a service or supply does not, of itself, make the service or supply Medically Necessary.

**Medicare** means the Health Insurance for the Aged Act, Title XVIII of the Social Security Amendments of 1965, as amended.

**Mental or Nervous Disorder** means any condition or disease, regardless of its cause, listed in the most recent edition of the International Classification of Diseases as a Mental Disorder, including but not limited to neurosis, psychoneurosis, psychopathy, psychosis, bipolar Affective Disorder or Autism.

**Outpatient Surgery Facility** means a licensed or certified public or private medical facility:

1.   With an organized staff of Physicians;

2.   Which is permanently equipped and operated primarily for the purpose of performing surgical procedures; and

3.   Which does not provide accommodations for overnight stays; and

4.   Which provide continuous Physician services and registered professional nursing services whenever a patient is in the facility.

The term "Outpatient Surgery Facility" will include surgical suites, and facilities operated by a Hospital, which provide scheduled, non-emergency outpatient surgical care.

The term "Outpatient Surgery Facility" does not include:

1.   Hospital emergency room;

2.   Trauma center;

3.   Physician's office (except as shown above); or

4.   Clinic; or

5.   Any facility that an Insured Person is admitted to as an overnight bed-patient and charged for room and board.

**Period of Confinement** means a period which begins on the date an Insured Person is admitted to a Hospital or Outpatient Surgery Facility for the treatment of an Injury or Sickness and ends when the Insured Person completes 180 consecutive days without being Confined in a Hospital or Outpatient Surgery Facility for the same or related cause. In no event will a single Period of Confinement exceed 365 days. A separate Period of Confinement will apply to each Injury or Sickness.

**Physician** means a legally qualified licensed practitioner of the healing arts who provides care within the scope of his or her license. (A member of the Insured Person's Immediate Family will not be considered a Physician.)

**Pre-Existing Condition** means a medical condition, Sickness or Injury not excluded by name or specific description for which:

1.   Medical advice, Consultation, or treatment was recommended by or received from a Physician within the two year period before the Effective Date of Coverage; however, routine follow-up care to determine whether breast cancer has recurred in a person who has previously considered to be free of breast cancer will not be considered a Pre-Existing Condition unless breast cancer is found during or as a result of the follow-up care; or

2.   Symptoms existed which would cause a person to seek diagnosis, care or treatment within the two year period before the Effective Date of Coverage.

**Sickness** means an illness or disease which first manifests itself after the Insured Person's coverage becomes effective and while the coverage is in force.

**Surgery** means:

1.  The performance of generally accepted operative and cutting procedures, including surgical diagnostic procedures, specialized instrumentation's, endoscopic examinations, and other invasive procedures;
2.  The correction of fractures and dislocations; and
3.  Any of the procedures designated by Current Procedural Terminology codes as Surgery.

**Total Disability or Totally Disabled** means:

1.  With respect to You, You are unable to engage in any employment or occupation for which You are qualified by reason of education, training or experience and are not in fact engaged in any employment or occupation for wage or profit; and.
2.  With respect to any other person under the Group Policy, Confinement as a bed patient in a Hospital.

**Usual and Customary Charges** means charge which is the smallest of:

1.  The actual charge;
2.  The charge usually made for the Covered Expense by the provider who furnishes it;
3.  The prevailing charge made for a Covered Expense in a geographical area by those of similar professional standing.

**We, Us and Our** means The MEGA Life and Health Insurance Company.

**You, Your, Yours** means the primary insured named in the Certificate Schedule whose coverage has become effective and has not terminated.

## EFFECTIVE DATE OF COVERAGE

**Beginning of Coverage**

We require evidence of insurability before coverage is provided. Once We have approved Your enrollment application based upon the information You provided therein, the Effective Date of Coverage for You and those Eligible Dependents listed in the application and accepted by Us will be the Certificate Date shown in the CERTIFICATE SCHEDULE.

**Newborn Children**

If the Insured Person have one or more Eligible Dependents covered under the Group Policy, a child born to the Insured Person, the Insured Person's Covered Dependent spouse, or to any other Covered Dependent will be provided coverage after the Certificate Date from the moment of birth. However, the coverage for the newborn child of any Covered Dependent other than your spouse shall terminate eighteen months after the birth of the newborn child. Notice must be received by us within 31 days of the newborn child's birth. If timely notice is given, no additional premium will be charged for the newborn child's coverage during the duration of the notice period. If timely notice of the birth is not given to us, we will charge an additional premium from the moment of birth. Coverage for such child shall not be denied due to untimely notification of the birth.

The same health insurance benefits applicable for Covered Dependents under the Group Policy shall be payable with respect to a child born to the Insured Person, the Insured Person's Covered Dependent spouse, or any other Covered Dependent, except that Coverage for newly born children:

1.  shall also include the necessary care and treatment for sickness and injury including medically diagnosed congenital defects, birth abnormalities or prematurity; but shall not include routine well-baby care; and
2.  shall include the transportation costs of the newborn to and from the nearest available facility appropriately staffed and equipped to treat the newborn's condition, when the attending Physician certifies that special transportation is necessary to protect the health and safety of the newborn child. Cost of such transportation shall not exceed the usual and customary charges up to one thousand dollars ($1,000.00).

**Additional Dependents**

You may add Eligible Dependents by providing evidence of insurability satisfactory to Us and upon payment of any additional premium, if required.

The acceptance of a new Eligible Dependent and the Effective Date of Coverage for such Eligible Dependent will be shown by endorsement and the date of the endorsement.

## PREMIUMS

**Premium Due Date**

Premiums are payable to Us at Our administrative office in North Richland Hills, Texas. The premium is payable monthly, quarterly, semi-annually or annually, as indicated in the CERTIFICATE SCHEDULE. Payment of any premium will not maintain coverage in force beyond the next premium due date, except as provided by the Grace Period. Upon the payment of a claim under this Certificate, any premium then due and unpaid or covered by any note or written order may be deducted therefrom.

**Grace Period**

There is a grace period of 31 days for the payment of any premiums due, except the first. At the end of the 31 day grace period, We may cancel the Certificate without further notice. During the grace period, the contract will remain in force; however, the Company is not obligated to pay any claims incurred by Insured Persons during the grace period unless and until the premium due is received during the grace period.

**Premium Changes**

We reserve the right to change the table of premiums, on a Class Basis, becoming due under the Group Policy at any time and from time to time; provided, We have given the Group Policyholder written notice of at least 31 days prior to the effective date of the new rates. Such change will be on a Class Basis. The premium for the Certificate may change in amount by reason of an increase in the Attained Age of the Insured Person.

## TERMINATION OF COVERAGE

**You**

Your coverage will terminate and no benefits will be payable under this Certificate and the attached Riders, if any:

1. At the end of the period for which premium has been paid;
2. At the end of the period through which premium has been paid following Our receipt of Your written request of termination;
3. On the date of fraud or misrepresentation by You;
4. On the date We elect to discontinue this plan or type of coverage. We will give You at least 90 days notice before the date coverage will be discontinued. You will be offered an option to purchase any other coverage that We offer without regard to health status;
5. On the date We elect to discontinue all coverage in Your state. We will give You and the proper state authority at least 180 days notice before the date coverage will be discontinued; or
6. On the date an Insured Person is no longer a permanent resident of the United States.

**Covered Dependents**

Your Covered Dependent's coverage will terminate under this Certificate on:

1. The date Your coverage terminates;
2. The date such dependent ceases to be an Eligible Dependent;
3. The date We receive Your written request to terminate a dependent's coverage.

The attainment of the limiting age for an Eligible Dependent will not cause coverage to terminate while that person is and continues to be both:

1. Incapable of self-sustaining employment by reason of mental retardation or physical handicap; and
2. Chiefly dependent on you for support and maintenance. For the purpose of this provision "Chiefly Dependent" means the Eligible Dependent receives the majority of his or her financial support from You.

We will require that You provide proof that the dependent is in fact a disabled and dependent person at least 31 days prior to the date upon which the dependent would otherwise reach the limiting age, and thereafter we may require such proof not more frequently than annually. In the absence of such proof we may terminate the coverage of such person after the attainment of the limiting age.

## Family Security Benefit

Beginning with the next premium due date following Our receipt of due proof of Your death, We will waive premiums for a period of 12 months for Your Covered Dependents. During this premium waiver period no increase in benefits or addition of Eligible Dependents, except newborns, will be considered. Provisions for termination of coverage for Covered Dependents will apply. Upon expiration of the waiver period, Your Covered Dependent spouse may continue coverage, as stated in the SPECIAL CONTINUATION PROVISION FOR DEPENDENTS by making required premium payments and by becoming a member of the association to which the Group Policy is issued.

## Special Continuation Provision For Dependents

Your Covered Dependents may continue their same (or substantially similar) coverage under a new Certificate without evidence of insurability if their coverage under this Certificate would otherwise terminate because they cease to be an Eligible Dependent for any of the following reasons:

1. Divorce, legal separation, Your death; or
2. A dependent child reaches the Limiting Age.

To continue coverage, You or Your Covered Dependent must request continuation of coverage by application or written notification within 31 days of the date coverage would otherwise terminate, pay any required premium and become a member of the association to which the Group Policy is issued.

## Health Conversion Privilege

If you or your Covered Dependents cease to be eligible for the insurance provided by the Group Policy for any reason, including discontinuance of the Group Policy in its entirety or with respect to your class, you or your Covered Dependents shall be entitled to group health conversion coverage without furnishing evidence of insurability. You must have been continuously insured under the Group Policy or any it replaces for the three month period prior to termination. You will not be entitled to the health conversion coverage if termination of the insurance under the Group Policy occurs because you failed to pay any required contribution or because any discontinued group coverage was replaced by similar group coverage within 31 days after termination. To obtain this coverage, you must make written application and pay the first premium within 63 days after the termination of the insurance under the Group Policy. The effective date of the health conversion coverage will be the day following the termination of the insurance under the Group Policy. If your dependents were also insured under the Group Policy, you shall be entitled to family conversion coverage, without furnishing evidence of insurability. This conversion privilege shall also be available to a dependent upon termination of coverage by reason of ceasing to be a Eligible Dependent under the Group Policy.

Subject to the following restrictions, You may be entitled to a Standard Conversion policy when your coverage terminates:

1. You will not be entitled to a Standard Conversion policy if the Standard Conversion policy provides benefits in excess of the benefits You had under the Group Policy;

1.  You will not be entitled to a Standard Conversion policy if you are covered, or coverage is available to you, under any other group health plan or arrangement that provides benefits similar to the benefits you had under the Group Policy;

2.  You will not be entitled to a Standard Conversion policy if similar benefits are available to you under Medicare or pursuant to any other federal or state law.

In any event, we will not issue health conversion coverage to any person if:

1.  such person is covered for similar benefits by another hospital, surgical, medical or major medical expense insurance policy or hospital or medical service subscriber contract or medical practice or other prepayment plan or by any other plan or program;

2.  such person is eligible for similar benefits (whether or not covered therefor) under any arrangement of coverage for individuals in a group whether on an insured or uninsured basis;

3.  similar benefits are provided for or available to such person, pursuant to or in accordance with the requirements of any state or federal law; or

the benefits provided under the sources referred to in 1) above for such person, or benefits provided or available under the sources referred to in 2) and 3) above for such person, together with the benefits provided by the health conversion coverage, would result in over-insurance according to our standards.

The issuance of any health conversion coverage described herein shall be subject to all of the rules and regulations of the state in which application is made. The benefit levels in the conversion plans may not exceed the benefit levels under the Group Policy.

The form of the individual or family coverage and all other terms and conditions shall be as provided by our rules for such individual or family coverage at the time application is made. If benefits for childbirth, mental and nervous disorders, substance abuse and dental were offered and elected prior to termination of the Group Policy, then the same benefits will be available under the conversion coverage.

### Group Policy

The Group Policyholder may terminate the Group Policy, provided written notice is given at least 31 days prior to the date of termination.

### Extension of Benefits

If an Insured Person is Totally Disabled at the time the Group Policy terminates, benefits will be payable for Covered Expenses incurred due to the Injury which caused such Total Disability. Such benefits are subject to the same terms and conditions of the Group Policy if the Group Policy had remained in force. This extension of benefits will cease on the earliest of :

1.  The date on which the Total Disability ceases; or

2.  The end of the 12 month period immediately following the date on which the Insured Person's insurance terminated.

### Pregnancy

If coverage under the Group Policy is terminated and coverage for pregnancy has been added by supplemental Rider, benefits payable for a pregnancy which commenced while this Certificate was in force will be extended until the pregnancy is terminated and thereafter as Medically Necessary, but not beyond 12 months.

### Reinstatement

If coverage under this Certificate terminates due to non-payment of premium, We require an application for reinstatement. The reinstatement will not become effective unless We approved such application. We will advise You of the effective date of reinstatement by giving You written notice of the date, by issuing You an amended Certificate or by issuing You a new Certificate. In any case, the reinstated coverage provides benefits only for:

1.  Injury occurring after the effective date of reinstatement; and

2.  Sickness first manifesting itself more than 10 days after the effective date of reinstatement.

## CASE MANAGEMENT

**Pre-notification Requests of Medical Non-Emergency Admissions**

The Insured Person, Physician or Hospital should call the toll-free telephone number shown on Your I.D. card at least five working days prior to the planned admission.

For emergency admissions, the patient, patient's representative, Physician or Hospital should call the toll-free telephone number shown on Your I.D. card within 2 working days of the admission to provide notification of any admission due to a Medical Emergency.

**IMPORTANT:** Pre-notification is not a guarantee that benefits will be paid.

**Case Management**

Case Management authorized by Us or Our designated representative can provide reimbursement for alternative methods of care, even if the Insured Person is not covered for the alternate care or setting. Case Management is a method where We or Our designated representative will review an Insured Person's health problem and develop a plan of care that provides the most cost effective care for the Insured Person's specialized needs. The intent of Case Management is to ensure appropriate, cost effective care by extending extra-contractual benefits for alternative methods of care to Insured Persons who require the acute level of care setting. It is not designed to extend extra-contractual benefits for alternative methods of care to Insured Persons who do not meet Our standards or for services not authorized by Us or Our designated representative.

Benefits will be provided for the approved alternative methods of care only when and for so long as is determined that the alternative services are Medically Necessary and cost effective. These benefits will count toward the Insured Person's Lifetime Maximum Amount.

Our decision to implement Case Management will be made following Consultation with the affected Insured Person, or his or her legal representative, and the Insured Person's Physician.

If alternative benefits are provided for an Insured Person in one instance, it will not obligate Us to provide the same or similar benefits for any person in any other instance; nor will it be construed as a waiver of Our right to administer the Group Policy in strict accordance with its express terms.

**Second Physician's Opinion**

We or our designated representative may require an Insured Person to obtain a second opinion with respect to the procedures in question from a Physician selected by Us. The Insured Person must cooperate in obtaining a second opinion including any examination, testing, x-ray, or diagnostic procedures as are reasonable. There is no Coinsurance for the Physician's evaluation for the second opinion, nor for any tests needed to form the second opinion.

**Pre-Admission Testing**

We or Our designated representative may require that certain testing be done before admission to a Hospital.

## BENEFITS

Benefits are payable under this Certificate for the following Covered Expenses. Unless otherwise stated herein, all Covered Expenses are subject to:

1. The Lifetime Maximum Amounts shown in the CERTIFICATE SCHEDULE;
2. The Deductible shown in the CERTIFICATE SCHEDULE;
3. The Coinsurance shown in the CERTIFICATE SCHEDULE;
4. The Maximum Benefit shown in the CERTIFICATE SCHEDULE;
5. The EXCLUSIONS AND LIMITATIONS; and

6.    All other provisions of the Group Policy.

## COVERED EXPENSES

Covered Expenses mean the Medically Necessary Usual and Customary Charges for the services, supplies, care or treatment covered under this Certificate which are incurred by an Insured Person as a result of Injury or Sickness and for which the Insured Person is legally obligated to pay. They are incurred on the date that the service is performed or the supply is furnished. Only that portion of a Usual and Customary Charge which is Medically Necessary is a Covered Expense. Covered Expenses must be incurred while this coverage is in force.

The services and supplies in the following provisions of this Covered Expenses section will also be payable for Covered Expenses incurred for treatment of cleft lip or cleft palate for a child under the age of 18, which include medical, dental, speech therapy, audiology and nutrition services, if such services are determined to be medically necessary by the treating physician; and for osteoporosis for high-risk individuals, including, but not limited to estrogen-deficient individuals, who are at clinical risk for osteoporosis, individuals who have vertebral abnormalities, individuals who are receiving long-term glucocorticoid (steroid) therapy, individuals who have primary hyperparathyroidism and individuals who have a family history of osteoporosis.

### Hospital Room and Board

Covered Expenses include semi-private accommodations and general nursing care furnished by the Hospital. The charges for a private room which exceed the charges for a semi-private room are not covered unless a private room is Medically Necessary.

### Hospital Intensive Care/Cardiac Care Unit

Covered Expenses include Confinement in the Hospital's intensive care or cardiac care unit. This benefit is payable in lieu of benefit amount payable for Hospital Room and Board.

### Miscellaneous Hospital Inpatient Charges

Covered Expenses include all charges made by a Hospital for miscellaneous medical services and supplies necessary for the treatment of the Insured Person during that Confinement.

Covered Expenses will include x-ray, laboratory and other diagnostic tests, services of a radiologist or radiology group and for services of a pathologist or pathology group for interpretation of diagnostic tests or studies.

Covered Expenses will also include charges for the administration of anesthesia for dental treatment or surgery for :
1.    A Covered Insured 8 years of age and under and when determined by a licensed dentist and the child's Physician to require Medically Necessary dental treatment in a Hospital or ambulatory surgical center; and
2.    A Covered Insured when the medical conditions would create significant medical risk for the individual in the course of the delivery of any Medically Necessary dental treatment or surgery if not rendered in a Hospital or ambulatory surgical center.

The fees charged for take home drugs, personal convenience items, or items not intended primarily for use of the Insured Person while Hospital Confined are not Covered Expenses.

### Mammography Screening

Covered Expenses include fees charged for Mammography Screening for any Insured female as follows:

1.    one baseline mammogram for any woman who is 35 years of age or older, but younger than 40 years of age;
2.    one mammogram every 2 years for any woman who is 40 years of age or older, but younger than 50 years of age, or more frequently based on the patient's Physician's recommendation;
3.    a mammogram every year for any woman who is 50 years of age or older; and

4.   one or more mammograms a year, based on a Physician's recommendation, for any woman who is at risk for breast cancer because of a personal or family history of breast cancer, having a history of biopsy-proven benign breast disease, having a mother, sister, or daughter who has or has had breast cancer, or a woman has not given birth before the age of 30.

Except as provided in subparagraph (2) above, Covered Expenses for Mammography will be provided with or without a Physician's prescription, if the Insured female obtains a mammogram in an office, facility, or uses a health testing service that utilizes radiological equipment registered with the Department of Health and Rehabilitative Services for breast cancer screening.

This benefit is not subject to the Deductible or Coinsurance amounts.

### Child Health Supervision Services

Child Health Supervision Services will be payable for each Covered Dependent from the moment of birth to age sixteen (16) years. In keeping with prevailing medical standards, such services are physician-delivered or physician-supervised services which include:
1.   a history;
2.   physical examination;
3.   developmental assessment;
4.   anticipatory guidance;
5.   appropriate immunizations; and
6.   laboratory test.

Benefits are limited to one visit payable to one provider for all of the services provided at each visit. Such services and periodic visits shall be provided in accordance with prevailing medical standards consistent with the Recommendations for Preventive Pediatric Health Care of the American Academy of Pediatrics.

The deductible amount, if any, under this Certificate will not apply to the Covered Expenses payable under this provision.

### Physician Visits while Hospital Confined

Covered Expenses include visits by a Physician, other than the surgeon, while Hospital Confined, limited to a single Physician visit per day.

### Surgery Benefit

Covered Expenses include the Physician's charges for performing Surgery. Covered Expenses also include services and supplies that are incurred for the prosthetic devices and Breast Reconstructive Surgery incident to a Mastectomy.

"Mastectomy" means the removal of all or part of the breast for Medically Necessary reasons as determined by a licensed Physician.

"Breast Reconstructive Surgery" means surgery to reestablish symmetry between the two breasts.

We will not pay for more than one Surgery performed through the same incision during the same operation; however, We will pay for the Surgery providing the largest benefit.

### Post-Surgical Mastectomy Care

Covered Expenses include outpatient post-surgical follow up care provided by a licensed health care professional qualified to provide post-surgical mastectomy care. The outpatient post-surgical mastectomy care may be provided in a Hospital, treating Physician's office, outpatient center, or Your home, as determined by the Physician.

### Assistant Surgeon Benefit

Covered Expenses include the Physician's charges for assisting the Physician performing Surgery.

**Anesthesiologist Benefit**

Covered Expenses include the Physician's charges for providing anesthesia during Surgery.

**Outpatient Surgery Facility Charges**

Covered Expenses include services furnished by and supplies received for use in an Outpatient Surgery Facility, including but not limited to:

1.  Use of operating room and recovery room;
2.  Administration of drugs and medicines during surgery;
3.  Dressings, casts, splints;
4.  Diagnostic services including radiology, laboratory or pathology performed at the time of the surgery.
5.  The charges for the administration of anesthesia for dental treatment or surgery for:
    a.  A Covered Person 8 years of age and under and when determined by a licensed dentist and the child's Physician to require Medically Necessary dental treatment in a Hospital or ambulatory surgical center; and
    b.  A Covered Insured when the medical conditions would create significant medical risk for the individual in the course of the delivery of any Medically Necessary dental treatment or surgery if not rendered in a Hospital or ambulatory surgical center.

**Ambulance Transport**

Covered Expenses include ground Ambulance transportation to a Hospital, provided the Insured Person is Confined to the Hospital.

**Minimum Stay Requirements for Covered Maternity Care**

This provision applies to an Insured Person's coverage only when the Insured Person incurs Covered Expenses for a normal childbirth delivery that is covered by an optional Maternity Benefit Rider or for Complications of Pregnancy as defined in the Certificate. Any normal childbirth delivery is subject to the Maximum Maternity Benefit Amount as stated in the optional Maternity Benefit Rider.

If an Insured Person incurs Covered Expenses for covered childbirth or cesarean section delivery, coverage will be provided for inpatient care for the Insured Person and her newborn as determined by the treating Physician to be Medically Necessary, in accordance with prevailing medical standards and consistent with guidelines for perinatal care of the American Academy of Pediatrics or the American College of Obstetricians and Gynecologists.

Covered Expenses includes the services of certified nurse-midwives, licensed midwives, and birth centers will be payable subject to the terms and conditions of the Certificate.

Post-delivery care will be included for a covered childbirth and may be obtained in the Hospital, in the attending Physician's office, in an outpatient maternity center, or in Your home by a qualified licensed health care professional trained in mother and baby care.

Post-delivery care services shall include physical assessment of the newborn and mother and the performance of any Medically Necessary clinical test and immunizations.

**Hospital Bill Audit**

If You find errors in Your medical bills, such as overcharges or charges for services not received, and have them corrected, We will pay a benefit. It will be to 50% of any savings We realize because of the resulting reduction in the amount of the Covered Expense. The maximum benefit We will pay for these cost savings is $1,000 in any one Injury or Sickness.

## EXCLUSIONS AND LIMITATIONS

**We will not provide any benefits for charges resulting from or in connection with:**

1. Any care not Medically Necessary or charges for which benefits are not specifically provided for in this Certificate;
2. Any act of war, declared or undeclared;
3. Suicide, attempted suicide, or any intentionally self-inflicted Injury, while sane or insane;
4. Any routine physical examination, except as provided by the Child Health Supervision services benefit;
5. Any Injury or Sickness arising out of, or in the course of, employment for wage or profit, provided the Insured Person is or could be covered under any Worker's Compensation Act, Occupational Disease Act, or similar act or law, unless the Insured Person is self employed;
6. Mental or Nervous Disorders, unless otherwise stated herein;
7. Drug abuse or addiction including alcoholism, or overdose of drugs, narcotics, or hallucinogens, unless taken as prescribed by a Physician;
8. An overdose of drugs, being intoxicated or under the influence of intoxicants, hallucinogens, narcotics or other drugs, unless taken as prescribed by a Physician;
9. Any drug, treatment or procedure that either promotes or prevents conception or prevents childbirth, including but not limited to: (a) artificial insemination; (b) in-vitro fertilization or other treatment for infertility; (d) treatment for impotency; (d) sterilization or reversal of sterilization; or (e) abortion (unless the life of the mother would be endangered if the fetus were carried to term), unless otherwise stated herein;
10. Radial keratotomy or any eye Surgery when the primary purpose is to correct nearsightedness, farsightedness, astigmatism, or any other refractive error;
11. Weight loss or modification, or complications arising therefrom, or procedures resulting therefrom, or for surgical treatment of obesity, including wiring of the teeth and all forms of Surgery performed for the purpose of weight loss or modification;
12. Breast reduction or augmentation unless necessary in connection with breast reconstructive Surgery following a mastectomy performed while insured under this Certificate;
13. Modification of the physical body in order to improve the psychological mental or emotional well-being of the insured Person, such as sex-change Surgery;
14. Marriage, family, or child counseling for the treatment of premarital, marriage, family or child relationship dysfunctions;
15. Routine newborn care, unless otherwise stated herein;
16. Engaging in an illegal occupation or illegal activity;
17. Care in a nursing home, custodial institution or domiciliary care or rest cures;
18. Preparation and presentation of medical reports for appearance at trials or hearings. Physical examinations required for school events, camp, employment, licensing and insurance are expressly excluded;
19. Immunizations required for the sole purpose of travel outside of the U.S.A;
20. Payment for care for military service connected disabilities for which the Insured Person is legally entitled to services and for which facilities are reasonably available to the Insured Person and payment for care for conditions that state or local law requires be treated in a public facility;
21. Experimental medical, surgical or other health care procedures, treatments, products or services, unless otherwise stated herein;
22. Personal comfort items, such as television, telephone, lotions, shampoos, etc.;
23. Cosmetic Surgery;
24. Dental Care, treatment or Surgery unless necessitated by Injury to sound natural teeth which occurs while insured under this Certificate. (The expense must be incurred within one year from the date of Injury, and while Hospital Confined or in a Outpatient Surgery Facility);
25. Corrective vision or hearing supplies or for the examination for prescribing or fitting such supplies;
26. The removal of warts, corns, calluses, the cutting and trimming of toenails, care for flat feet, fallen arches or chronic foot strain;
27. Hernia, hemorrhoids, tonsils, adenoids, middle ear disorders, myringotomy; or any disease or disorder of the reproductive organs unless the loss is incurred 6 months after the Insured Person becomes covered under this Certificate;
28. Prescription drug benefits, unless added by rider;
29. Normal pregnancy, except for Complications of Pregnancy, unless added by Rider; and

30. Treatment, services or supplies received outside the U.S. or Canada. However, benefits will be payable for Covered Expenses incurred as a result of an acute Sickness or Injury sustained during the first 30 days of travel outside of the U.S. or Canada. In no event will benefits be payable beyond the first 30 days of travel outside of the U.S. or Canada.

31. A Sickness which first manifests itself within 30 days after the Insured Person's coverage becomes effective, until coverage has been in force for a period of one year.

**Pre-Existing Condition**

We will not provide benefits for any loss resulting from a Pre-Existing Condition, as defined, unless the loss is incurred at least one year after the effective date of coverage for an Insured Person.

**Coverage After Age 65 or Earlier Medicare Eligibility**

When an Insured Person attains age 65 or becomes eligible for Medicare, whichever happens first, the benefits of this Certificate and its attachments, if any, are payable only to the extent that Covered Expenses are not paid by Medicare and they would otherwise be payable under this Certificate. The benefits will also be subject to any other EXCLUSIONS AND LIMITATIONS set forth in this Certificate.

## COORDINATION OF BENEFITS

All of the benefits provided under the Group Policy are subject to this provision. However, Coordination of Benefits (COB) may not be applied to claims less than fifty dollars ($50.00). If additional liability is incurred to raise the claim above fifty dollars ($50.00), the entire liability may be included in the COB computation.

**Plan** means any plan providing benefits or services for or by a reason of expenses incurred for hospital, medical, or dental care or treatment, which benefits or services are provided by:

1. Group, association group, or blanket insurance coverage;
2. Group Blue Cross, Blue Shield or other prepayment coverage provided on a group basis;
3. Any coverage under labor-management trustee plans; union welfare plans, self-funded plans, employer organization plans, employee benefit organization plans or any other arrangement of benefits for individuals of a group; any coverage under governmental programs, except Medicaid; and any coverage required or provided by any statute, including no-fault auto insurance.

The term "Plan" shall be construed separately with respect to each policy, contract or other arrangement for benefits or services and separately with respect to that portion of such policy, contract or other arrangement which reserves the right to take the benefits or services of other plans into consideration in determining its benefits and that portion which does not.

**This Plan** refers to provisions of the Group Policy which are subject to this section.

**Allowable Expense** will be any necessary, Usual and Customary Charge, all or part of which is covered by at least one of the Plans covering the Insured Person. Allowable Expenses to a "secondary" plan will include the value or amount of any deductible amount or co-insurance percentage or amount of otherwise Allowable Expenses which is not paid by the "primary" or first paying plan.

Some plans provide benefits in the form of services rather than cash payments. For those plans, the reasonable cash value of each service rendered will be deemed to be both an Allowable Expense and a benefit paid.

**Claim Determination Period** is a Calendar Year or portion thereof during which the Insured Person has been covered under This Plan.

Determination of benefits payable under This Plan and all other applicable Plans will be controlled by this provision, if without this provision the sum of the benefits payable under:

1. This Plan; and
2. All other applicable plans,

would exceed the Allowable Expense.

If the sum of 1. and 2. above does exceed the total Allowable Expense, benefits payable under This Plan will be reduced by the amount of benefits payable under all other Plans.

Benefits of any other Plans which contain a COB provision will be ignored when computing the benefits of This Plan if:

1. The other plan's COB provision states that the benefits will be determined after This Plan computes its benefits; and

2. The rules set forth below would require This Plan to compute its benefits first.

The rules that set the order of benefit determination are:

1. A plan that covers the Insured Person other than as a dependent will compute benefits before a plan that covers the Insured Person as a dependent; and

2. When a dependent is a child covered under separate plans of each parent, the plan covering the parent whose date of birth (month and day) precedes the other in the Calendar Year shall be primary; except:

   a) where both parents have the same birthday, the benefits of the plan which covered the parent longer are determined before those of the plan which covered the other parent for a shorter period of time; or

   b) where the parents are separated or divorced and the parent with custody of the child has not remarried, then the plan covering the parent with custody shall be primary; or

   c) where the parents are divorced and the parent with custody of the child has remarried; then: (i) the plan covering the parent with custody shall be primary, or (ii) the plan covering the step-parent of the child shall be primary to that of the parent without custody; or

   d) notwithstanding subparagraphs a), b), and c) above, where the parents are divorced or separated and there is a court decree establishing the financial responsibility of medical or other health care expenses with respect to the child of one parent, then the plan covering the parent with the financial responsibility shall be primary; and

3. If benefit determination order is not established above, the primary plan is the plan which has been in effect the longest except:

   a) if plan benefits of the Insured Person are based on a laid-off, or retired employee or a dependent of either, then that plan will be secondary to the other plan's benefits. If neither plan has a provision for a laid-off, or a retired employee or a dependent of either and each plan determines benefits after the other, then this subparagraph a) is not applicable.

We reserve the right to release or obtain information that We deem necessary, about any person to or from:

1. Any other insurance company; or

2. Any organization or person.

At Our request, the Insured Person shall furnish us with any information needed to determine payment of benefits under this COB provision.

**Facility of Payment**

Whenever benefits which should have been paid under This Plan are paid under any other Plan, We shall have the right to pay to the organization that made the payments any amount that We feel will satisfy this provision. Amounts so paid will be deemed benefits paid under This Plan and We will be fully discharged from liability under This Plan.

**Right of Recovery**

If We, at any time, pay the total Allowable Expense and that amount exceeds the payment required to satisfy the intent of this provision, We will have the right to recover such payments, to the extent of such excess, from among one or more of the following, as We shall determine: any persons to or for or with respect to whom such payments were made; any other insurance companies; any other organization.

**Time Limit for Payment**

Payment of benefits must be made within thirty (30) calendar days after submittal of a proof of loss, unless We provide the claimant a clear and concise statement of a valid reason for further delay which is in no way connected with or caused by the existence of this COB provision nor otherwise attributable to Us.

## GENERAL PROVISIONS

**Entire Contract**

The Entire Contract consists of:

1. The Group Policy, which includes this Certificate;
2. The application of the Group Policyholder, which will be attached to the Group Policy;
3. Any enrollment applications for the proposed insured individuals; and
4. Any endorsements, amendments or riders attached.

All statements made by the Group Policyholder or by You will, in the absence of fraud, be deemed representations and not warranties.

Only Our President, a Vice President or Secretary has the power on Our behalf to execute or amend the Group Policy. No other person will have the authority to bind Us in any manner. No agent may accept risks, alter or amend coverage or waive any provisions of the Group Policy. Any change in the Group Policy will be made by amendment approved by the Group Policyholder and signed by Us. Such amendment will not require the consent of any Insured Person.

**Notice of Claim**

Written notice of claim must be given to Us within 20 days, or as soon as reasonably possible. Written notice of claim given by or on behalf of the Insured Person to Us with information sufficient to identify such person will be considered notice to Us.

**Claim Forms**

When We receive the notice of claim, We will send the Insured Person forms for filing proof of loss. If these forms are not furnished within 15 days, the Insured Person will meet the proof of loss requirements by giving Us a written statement of the nature and extent of the loss within the time limit stated in the next provision.

**Proof of Loss**

Written proof of loss must be furnished to Us at Our administrative office in North Richland Hills, Texas, within 90 days after the date of the loss for which claim is made. Failure to furnish written proof of loss within that time will neither invalidate nor reduce any claim if it is shown that it was not reasonably possible to furnish written proof of loss within that time; provided such proof is furnished as soon as reasonably possible and in no event, in the absence of legal incapacity, later than one year from the time proof is otherwise required.

**Claim Payments**

We will pay all benefits due under the Group Policy promptly upon receipt of due proof of loss.

All benefits are payable to You, however, at Our Option, We may pay the provider of service instead, unless You have requested otherwise in writing prior to providing proof of loss. If any such benefits remain unpaid at Your death, or if You are, in Our opinion, incapable of giving a legally binding receipt for payment of any benefit, We may, at Our option, pay such benefit to Your estate or any one or more of the following relatives: Your spouse; mother, father, child or children; brother or brothers; sister or sisters. Any payment so made will constitute a complete discharge of Our obligations to the extent of such payment.

**Physical Examination**

We will, at Our own expense, have the right and opportunity to examine the Insured Person whose Injury or Sickness is the basis of a claim when and as often as We may reasonably require during the pendency of a claim and to make an autopsy in case of death, unless prohibited by law.

**Legal Action**

No action at law or in equity will be brought to recover on the Group Policy prior to the expiration of 60 days after proof of loss has been filed as required by the Group Policy; nor may any action be brought after the expiration of 3 years after the time written proof of loss is required to be furnished.

**Age Misstatement**

If the age of any Insured Person has been misstated, Our records will be changed to show the correct age. The benefits provided will not be affected if the Insured Person continues to be eligible for coverage at the correct age. However, premium adjustments, including collection of any premium due Us because of past underpayments, will be made so that We receive the premiums due at the correct age payable on the premium due date following Our notification of an age correction.

**Incontestability**

After 2 years from the Insured Person's Effective Date of Coverage, no misstatements, except fraudulent misstatements, made in the enrollment application will be used to void the coverage, or deny a claim unless the loss was incurred during the first 2 years following such Insured Person's Effective Date of Coverage.

No claim for a loss incurred one year after an Insured Person's Effective Date of Coverage will be reduced or denied as a Pre-Existing Condition.

**Conformity**

Any provision of this Certificate which, on the Effective Date of Coverage, is in conflict with the extra-territorial statutes of the state in which You reside on such date, is hereby amended to conform to the minimum requirements of such statutes.

**Change of Residence**

If You move, You must notify the Company.  Only the extra-territorial benefits mandated by the State in which You reside will be considered Covered Expenses under this Certificate. An Insured Person must be a permanent resident of the United States in order to remain eligible for insurance under this Certificate.

**Subrogation**

You agree that We shall be subrogated to Your right to damages, to the extent of the benefits provided by the Certificate, for Injury or Sickness that a third party is liable for or causes. You agree to repay Us first out of any monies You obtain regardless of the amount that You recover.  In the event that We retain Our own attorney to represent Our subrogation interest, We will not be responsible for paying a portion of Your attorney fees or costs.

You assign to Us Your claim against a liable party to the extent of Our payments, and shall not prejudice Our subrogation rights.  Entering into a settlement or compromise arrangement with a third party without Our prior written consent shall be deemed to prejudice Our rights.  You shall promptly advise Us in writing whenever a claim against another party is made and shall further provide to us such additional information as is reasonably requested by Us. You agree to fully cooperate in protecting Our rights against a third party.

**Right of Reimbursement**

You may receive benefits under the Group Policy, and may also recover losses from another source, including Workers' Compensation, uninsured, underinsured, no-fault or personal injury protection coverages. The recovery may be in the form of a settlement, judgement, or other payment.

You must reimburse Us from these recoveries in an amount up to the benefits paid by Us under the Group Policy. You agree to repay us first out of any monies You obtain regardless of the amount that You recover.  We have an automatic lien on any recovery.

# THE MEGA LIFE AND HEALTH INSURANCE COMPANY

A Stock Company
(Hereinafter called: the Company, We, Our or Us)
Home Office: Oklahoma City, Oklahoma
Administrative Office: P.O. Box 982010
North Richland Hills, Texas 76182-8010
Customer Service: 1-800-527-5504

## AIR AMBULANCE RIDER

This Rider is made a part of the Group Policy and Certificate to which it is attached. The Rider is subject to all provisions, terms, DEFINITIONS and EXCLUSIONS AND LIMITATIONS of the Group Policy and Certificate which are not inconsistent with the provisions of this Rider.

The benefits provided by this Rider will not duplicate the benefits provided under the Certificate and any other rider

### COVERED EXPENSES

We will pay benefits for Covered Expenses of an Insured Person while this Rider is in force for Air Ambulance transportation to the nearest available medical facility that can provide adequate care in the event of a Medical Emergency, as defined in the Certificate. Air Ambulance transportation is payable under this Rider at a base rate of $1500, plus an additional $20 per mile, up to a maximum benefit of $3500 per Calendar Year.

This benefit is payable only if:

1. the Insured Person requires an advanced level of care during transportation; and
2. the potential delays which may be associated with ground transportation, including road conditions and traffic, could jeopardize the Insured Person's condition.

**Air Ambulance** means a privately or publicly owned aircraft appropriately licensed by the state where the service originated; that is designed and used to provide air transport of persons suffering from a Sickness or Injury and that contains all life-saving equipment and staff as required by state and local law.

Covered Expenses incurred under this Rider will not be used to satisfy the Certificate Deductible.

We will provide this benefit in consideration of the payment of the required premium for this Rider.

Rider effective date, if different from Certificate Date:_____

### THE MEGA LIFE AND HEALTH INSURANCE COMPANY

Secretary

President

25902

CMRXX109001

# THE MEGA LIFE AND HEALTH INSURANCE COMPANY

A Stock Company
(Hereinafter called: the Company, We, Our or Us)
Home Office: Oklahoma City, Oklahoma
Administrative Office: P.O. Box 982010
North Richland Hills, Texas 76182-8010
Customer Service: 1-800-527-5504

## OUTPATIENT ACCIDENT EXPENSE BENEFIT RIDER

This Rider is made a part of the Group Policy and Certificate to which it is attached. The Rider is subject to all provisions, terms, DEFINITIONS and EXCLUSIONS AND LIMITATIONS of the Group Policy and Certificate which are not inconsistent with the provisions of this Rider.

The benefits provided by this Rider will not duplicate the benefits provided under the Certificate and any other rider and are subject to the maximum benefit amount and deductible shown for this Rider in the CERTIFICATE SCHEDULE.

## COVERED EXPENSES

We will pay benefits for Covered Expenses of an Insured Person while this Rider is in force, for the Medically Necessary treatment of an Injury while not Hospital Confined. This benefit will be payable subject to the following conditions:

1. Initial treatment by a Physician must begin within 72 hours of the Injury; and
2. Any treatment of the Injury, beyond the initial treatment, must be received within 45 days of the Injury.

We will provide this benefit in consideration of the payment of the required premium for this Rider.

Rider effective date, if different from Certificate Date: _____

### THE MEGA LIFE AND HEALTH INSURANCE COMPANY

SECRETARY                          PRESIDENT

25882

CMRXX74001

# THE MEGA LIFE AND HEALTH INSURANCE COMPANY

A Stock Company
(Hereinafter called: the Company, We, Our or Us)
Home Office: Oklahoma City, Oklahoma
Administrative Office: P.O. Box 982010
North Richland Hills, Texas 76182-8010
Customer Service: 1-800-527-5504

## PHYSICIAN OFFICE VISIT BENEFIT RIDER

This Rider is made a part of the Group Policy and Certificate to which it is attached. The Rider is subject to all provisions, terms, DEFINITIONS and EXCLUSIONS AND LIMITATIONS of the Group Policy and Certificate which are not inconsistent with the provisions of this Rider.

The benefits provided by this Rider will not duplicate the benefits provided under the Certificate and any other rider and are subject to the maximum benefits and Copayments shown for this Rider in the CERTIFICATE SCHEDULE.

Benefits payable under this Rider are not subject to the Certificate Deductible.

## COVERED EXPENSES

We will pay Covered Expenses incurred by an Insured Person, while this Rider is in force, for Medically Necessary visits to the Physician's office or clinic and for related care services provided by the Physician as a part of such visit, up to the Daily Maximum Benefit subject to the Copayment shown in the CERTIFICATE SCHEDULE. No benefits are payable for services such as routine examinations, immunizations, and preventive care.

**Copayment** means the amount the Insured Person is required to pay for specifically listed Covered Expenses. The Copayment for this Rider is shown in the CERTIFICATE SCHEDULE. Copayments do not count toward Deductibles or Coinsurance Maximums.

Benefits payable under this Rider will not be used to satisfy the Certificate Deductible.

We will provide this benefit in consideration of the payment of the required premium for this Rider.

Rider effective date, if different from Certificate Date: _____

## THE MEGA LIFE AND HEALTH INSURANCE COMPANY

SECRETARY                                       PRESIDENT

25886

CMRXX78001

## THE MEGA LIFE AND HEALTH INSURANCE COMPANY

A Stock Company
(Hereinafter called: the Company, We, Our or Us)
Home Office: Oklahoma City, Oklahoma
Administrative Office: P.O. Box 982010
North Richland Hills, Texas 76182-8010
Customer Service: 1-800-527-5504

### WELLNESS RIDER

This Rider is made a part of the Group Policy and Certificate to which it is attached. The Rider is subject to all provisions, terms, DEFINITIONS and EXCLUSIONS AND LIMITATIONS of the Group Policy and Certificate which are not inconsistent with the provisions of this Rider.

The benefits provided by this Rider will not duplicate the benefits provided under the Certificate and any other rider and are subject to the maximum benefits and Copayment shown for this Rider in the CERTIFICATE SCHEDULE.

Benefits payable under this Rider are not subject to the Certificate Deductible.

### BENEFITS

We will pay benefits for the following preventive health care services incurred by an Insured Person, while this Rider is in force:

1. Annual health assessments, including but not limited to, physical examinations, blood pressure, height and weight measurement, provided such services are incurred after this Rider has been in force for at least 12 months;
2. Pediatric/juvenile well child care through age 18, including routine immunizations.

We will provide this benefit in consideration of the payment of the required premium for this Rider.

Rider effective date, if different from Certificate Date: _____

### THE MEGA LIFE AND HEALTH INSURANCE COMPANY

SECRETARY                                          PRESIDENT

25888-FL                                                              CMRFL10001

# THE MEGA LIFE AND HEALTH INSURANCE COMPANY

A Stock Company
(Hereinafter called: the Company, We, Our or Us)
Home Office: Oklahoma City, Oklahoma
Administrative Office: P.O. Box 982010
North Richland Hills, Texas 76182-8010
Customer Service: 1-800-527-5504

## AMBULATORY CARE RIDER

This Rider is made a part of the Group Policy and Certificate to which it is attached. The Rider is subject to all provisions, terms, DEFINITIONS and EXCLUSIONS AND LIMITATIONS of the Group Policy and Certificate which are not inconsistent with the provisions of this Rider.

The benefits provided by this Rider will not duplicate the benefits provided under the Certificate and any other rider and are subject to the maximum benefit amount and Coinsurance, the deductible and the Lifetime Maximum Benefit Amount shown for this Rider in the CERTIFICATE SCHEDULE.

## COVERED EXPENSES

We will pay benefits for Covered Expenses incurred by an Insured Person, while this Rider is in force, for:

1.   Diagnostic x-rays and interpretations charges;
2.   Laboratory and pathological examinations; and
3.   Physical, Occupational, Speech Therapy (preceded by Hospital Confinement or Surgery and not received during Hospital Confinement);

while not Confined to a Hospital and that are related to and necessary for the diagnosis and treatment of a Sickness or Injury. Benefits under this Rider include, but are not limited to, Covered Expenses incurred for:

| | |
|---|---|
| CAT Scans | Magnetic Resonance Imaging (MRI) |
| Mammograms | Upper/Lower G.I. Series |
| Electrocardiogram (EKG) | Blood or serum analysis |
| Angiogram | Stress Tests |

## LIMITATIONS AND EXCLUSIONS

In addition to the EXCLUSIONS and LIMITATIONS of the Certificate, We will not pay benefits under this Rider for:

1.   Physician's office visit or clinic charges, Hospital emergency room charges, Outpatient facility charges, Outpatient Surgery Facility charges or any other facility charges associated with the above Covered Expenses;
2.   Pre-Existing conditions;
3.   Physical examinations or checkups;
4.   Prescription drugs and medicines;
5.   Radiation or chemotherapy for the purpose of modification or destruction of cancerous tissue;
6.   Any test, procedures or services related to pregnancy or childbirth unless Medically Necessary due to Complications of Pregnancy, as defined in the Certificate.

25885                                                                    CMRXX77001